UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

KIMBERLY JEAN FRANCIS,

   Plaintiff,

      v.                                                                   No. 3:18-cv-2136(WIG)

ANDREW M. SAUL,
Commissioner of
Social Security[1],

   Defendant.

————————————————X

**RULING ON PENDING MOTIONS**

This is an administrative appeal following the denial of the plaintiff, Kimberly Francis', application for Title II disability insurance benefits ("DIB"). It is brought pursuant to 42 U.S.C. §405(g).[2] Plaintiff now moves for an order reversing the decision of the Commissioner of the

---

[1] The President nominated Andrew M. Saul to be Commissioner of Social Security; the Senate Confirmed his appointment on June 4, 2019, vote number 133. He is substituted pursuant to Fed. R. Civ. P. 25(d). The Clerk is directed to amend the caption to comply with this substitution.

[2] Under the Social Security Act, the "Commissioner of Social Security is directed to make findings of fact, and decisions as to the rights of any individual applying for a payment under [the Act]." 42 U.S.C. §§ 405(b)(1) and 1383(c)(1)(A). The Commissioner's authority to make such findings and decisions is delegated to administrative law judges ("ALJs"). *See* 20 C.F.R. §§ 404.929; 416.1429. Claimants can in turn appeal an ALJ's decision to the Social Security Appeals Council. *See* 20 C.F.R. §§ 404.967; 416.1467. If the appeals council declines review or affirms the ALJ opinion, the claimant may appeal to the United States district court. Section 205(g) of the Social Security Act provides that "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C § 405(g).

Social Security Administration ("the Commissioner"), or in the alternative, an order remanding her case for a rehearing. [Doc. # 13]. The Commissioner, in turn, has moved for an order affirming his decision. [Doc. # 16. After careful consideration of the arguments raised by both parties, and thorough review of the administrative record, the Court grants Plaintiff's motion and remands the case for further proceedings.

**LEGAL STANDARD**

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A claimant will meet this definition if his or her impairments are of such severity that the claimant cannot perform pervious work and also cannot, considering the claimant's age, education, and work experience, "engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Commissioner must follow a sequential evaluation process for assessing disability claims. The five steps of this process are as follows: (1) the Commissioner considers whether the claimant is currently engaged in substantial gainful activity; (2) if not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities; (3) if the claimant has a "severe impairment," the Commissioner must ask whether, based solely on the medical evidence, the claimant has an impairment which "meets or equals" an impairment listed in Appendix 1 of the regulations (the Listings). If so, and it meets the durational requirements, the Commissioner will consider the claimant disabled, without considering vocational factors such as age, education, and work

2

experience; (4) if not, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has the residual functional capacity to perform his or her past work; and (5) if the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work in the national economy which the claimant can perform. *See* 20 C.F.R. §§ 404.1520; 416.920. The claimant bears the burden of proof on the first four steps, while the Commissioner bears the burden of proof on the final step. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014).

"A district court reviewing a final . . . decision [of the Commissioner of Social Security] pursuant to section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), is performing an appellate function." *Zambrana v. Califano*, 651 F.2d 842, 844 (2d Cir. 1981). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Accordingly, the district court may not make a *de novo* determination of whether a plaintiff is disabled in reviewing a denial of disability benefits. *Id.*; *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the court's function is to first ascertain whether the Commissioner applied the correct legal principles in reaching his conclusion, and then whether the decision is supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). Therefore, absent legal error, a decision of the Commissioner cannot be set aside if it is supported by substantial evidence. *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It must be "more than a scintilla or touch of proof here and there in the record." *Id.* If the Commissioner's decision is supported by substantial evidence, that decision will be sustained,

even where there may also be substantial evidence to support the plaintiff's contrary position. *Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir. 1982).

I. **BACKGROUND**

   a. **Facts**

   Plaintiff filed her DIB application on January 26, 2016, alleging an onset of disability as of May 1, 2013. Her claim was denied at both the initial and reconsideration levels. Thereafter, Plaintiff requested a hearing. On November 15, 2017, a hearing was held before Administrative Law Judge Imelda K. Harrington ("the ALJ"). Plaintiff, who was represented by counsel, and a vocational expert ("VE") testified at the hearing. On January 25, 2018, the ALJ issued a decision denying Plaintiff's claims. Plaintiff timely requested review of the ALJ's decision by the Appeals Council. On October 18, 2018, the Appeals Council denied review, making the ALJ's decision the final determination of the Commissioner. This action followed.

   Plaintiff was forty-seven years old on the alleged onset of disability date. (R. 27). She has a high school education and can communicate in English. (R. 28). Plaintiff has past work experience as a cashier (including stocking shelves) and as a retail manager (trainee). (R. 27). Plaintiff's complete medical history is set forth in the Joint Stipulation of Facts filed by the parties. [Doc. # 13-1]. The Court adopts this stipulation and incorporates it by reference herein.

   b. **The ALJ's Decision**

   The ALJ followed the sequential evaluation process to determine whether Plaintiff was disabled under the Social Security Act.

   At Step One, the ALJ found Plaintiff has not engaged in substantial gainful activity since May 1, 2013. (R. 18). At Step Two, the ALJ found Plaintiff has the following severe impairments: obesity, osteoarthritis, affective disorder, anxiety disorder, and post-traumatic

stress disorder. (R. 18). At Step Three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (R. 20-22). Next, the ALJ determined Plaintiff retains the following residual functional capacity[3]:

> to perform light work as defined in 20 C.F.R. 404.1567(b) except: The claimant can frequently balance; occasionally stoop, kneel, crouch, and crawl; occasionally climb ramps and stairs; never climb ladders, ropes or scaffolds; can perform occasional overhead reaching with the right upper extremity (the dominant side); must avoid concentrated exposure to extreme heat and humidity; must avoid direct exposure to unprotected heights; can perform simple, routine tasks involving no more than simple, short instructions and simple work related decisions with a few work place changes; and the claimant can have occasional interaction with the general public, co-workers, and supervisors.

(R. 22).

At Step Four, the ALJ found Plaintiff is unable to perform any past relevant work. (R. 27). Finally, at Step Five, the ALJ relied on the testimony of the VE to conclude that there are jobs existing in significant numbers in the national economy Plaintiff can perform. (R. 28-29). Specifically, the VE testified that a person with Plaintiff's vocational factors and the assessed RFC can perform the positions of price marker and laundry folder. (R. 28-29). Accordingly, the ALJ determined Plaintiff was not disabled from May 1, 2013, through the date of his decision, January 25, 2018.

## II. DISCUSSION

Plaintiff raises several arguments in support of her Motion to Reverse, which the Court will address in turn.

---

[3] Residual functional capacity ("RFC") is the most a claimant can do in a work setting despite his or her limitations. 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1).

a. **Development of the Record**

Plaintiff argues that the ALJ's ruling should be reversed or remanded for a number of reasons relating to a failure to develop the record and obtain medical source statements from certain treating physicians and clinicians including mental health provider APRN Jacqueline Rugg, primary care physician Dr. Christopher Curdo, neurologists Drs. Anna Szekely and Krithi Irmady and chiropractor Dr. Richard Powers.[4] [Doc. #13-2 at 1-8]. For the reasons that follow, the Court finds that the ALJ did not fulfill her duty to develop the record and that remand is warranted to obtain treatment records and a medical source statements from treating physicians and clinicians.

"It is the rule in our circuit that the ALJ, unlike the judge in a trial, must [him]self affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1997) (internal quotation marks omitted); *see Moreau v. Berryhill*, No. 3:17-CV-396 (JCH), 2018 WL 1316197, at *4 (D. Conn. Mar. 14, 2018) ("An ALJ in a social security benefits hearing has an affirmative obligation to develop the record adequately." (internal quotation marks omitted) ). "Whether the ALJ has satisfied this obligation or not must be addressed as a threshold issue." *Moreau*, 2018 WL 1316197, at *4. "Even if the ALJ's decision might otherwise be supported by substantial evidence, the Court cannot reach this conclusion where the decision was based on an incomplete record." *Id.* (quoting *Downes v. Colvin*, No. 14-CV-7147 (JLC), 2015 WL 4481088, at *12 (S.D.N.Y. July 22, 2015)).

---

[4] The ALJ correctly noted that Dr. Power's Final Report dated November 8, 2016, did not "provide any specific functional limitations, making it unpersuasive in establishing the claimant's residual functional capacity." (R. 26).

6

"The expert opinions of a treating physician are of particular importance to a disability determination." *Id.* at *5. "What is valuable about the perspective of the treating physician and what distinguishes this evidence from the examining physician and from the ALJ is [the treating physician's] opportunity to develop an informed opinion as to the physical status of the patient." *Halle v. Astrue*, No. 3:11-CV-1181 (VLB), 2012 WL 4371241, at *6 (D. Conn. Sept. 24, 2012) (citing *Peed v. Sullivan*, 778 F. Supp. 1241, 1246 (E.D.N.Y. 1991) ). "In fact, where there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history 'even when the claimant is represented by counsel or ... by a paralegal.'" Rosa v. Callahan, 168 F.3d 72, 79 (2d Cir. 1999) (quoting *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir.1996).

This is not a case where plaintiff suffers relatively little physical impairment such that the ALJ may render a common sense judgment about plaintiff's functional capacity. The ALJ acknowledged as much be designating as "severe" plaintiff's obesity, osteoarthritis, affective disorder, anxiety disorder and post-traumatic stress disorder, (R. 18), and assessing an RFC with extensive and detailed limitations.

Here, the ALJ assigned "great weight" to the mental RFC assessment completed by Dawn Renaud, LMFT on February 26, 2016. (R. 26, 553-57). However, reliance on this 2016 assessment by Ms. Renaud is problematic. First, the mental RFC was completed four months after plaintiff began treatment at the counseling center. Ms. Renaud provided no opinion after February 2016, nearly two years before the ALJ's decision. Moreover, with one possible exception, ten days after plaintiff's initial intake, there is no complete treatment note of any session between Ms. Renaud and Ms. Francis after October 21, 2015. (R. 542-45). The gap in the record of any treatment from Ms. Renaud after that date is unexplained. Rather, the record only contains treatment records from APRN Jacqueline Rugg who provided medication management

7

from January 2016 through September 2017. Of note is an entry dated May 16, 2017, where Ms. Rugg states that plaintiff reported that she "had a meltdown on Friday, 5/5" when she came to the clinic for an appointment with Dawn. (R. 683). Ms. Rugg made references throughout the record to plaintiff continuing treatment with Dawn, including in the last treatment record from September 2017. (R. 675, 680, 685, 689, 693). This may be a reference to treatment with Dawn Renaud. However, there are no treatment records from Dawn Renaud after October 2015, or any other therapist named Dawn. This omission is significant in light of the fact that the mental RFC was submitted only four months after beginning mental health treatment and after only one appointment with Dawn Renaud. Finally, there is no mental health assessment from Ms. Rugg, who was providing mental health treatment from January 2016 through September 2017, and is in a position to provide an opinion on plaintiff's mental health impairments and ability to function in a work setting. The Court finds that this case should be remanded for further development of the record from plaintiff's mental health providers and to obtain medical source opinions.

With regard to plaintiff's physical impairments, there is no medical opinion from plaintiff's treating physicians and/or specialists addressing the functional limitations that flow from her physical impairments to support the ALJ's physical RFC findings.

> The proceedings before an ALJ are not supposed to be adversarial. Where there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history "even when the claimant is represented by counsel or ... by a paralegal." *Perez v. Chater,* 77 F.3d 41, 47 (2d Cir.1996); *see also Pratts v. Chater,* 94 F.3d 34, 37 (2d Cir. 1996) ("It is the rule in our circuit that 'the ALJ, unlike a judge in a trial, must herself affirmatively develop the record' in light of 'the essentially non-adversarial nature of a benefits proceeding.' This duty ... exists even when ... the claimant is represented by counsel." (quoting *Echevarria v. Secretary of Health & Human Servs.,* 685 F.2d 751, 755 (2d Cir. 1982))).

*Richardson v. Barnhart*, 443 F. Supp. 2d 411, 423 (W.D.N.Y. 2006).

> [A]lthough the RFC determination is an issue reserved for the commissioner, see 20 C.F.R. §§ 404.1527(d)(2), 404.1546(c), 416.927(d)(2), 416.946(c), "'an ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." *Dailey v. Astrue,* No. 09–CV–0099, 2010 WL 4703599, at *11 (W.D.N.Y. Oct. 26, 2010) (quoting *Deskin v. Comm'r of Soc. Sec.,* 605 F.Supp.2d 908, 912 (N.D. Ohio 2008)). Because there is no medical source opinion supporting the ALJ's finding that House can perform sedentary work, the court concludes that the ALJ's RFC determination is without substantial support in the record and remand for further administrative proceedings is appropriate. *See* 20 C.F.R. §§ 404.1520b(c), 416.920b(c); *see also Suide v. Astrue,* 371 F. App'x 684, 689-90 (7th Cir. 2010) (holding that "the evidentiary deficit left by the ALJ's rejection" of a physician's reports, but not the weight afforded to the reports, required remand).

*House v. Astrue*, No. 5:11-CV-915 GLS, 2013 WL 422058, at *4 (N.D.N.Y. Feb. 1, 2013).

Accordingly, the Court finds that additional administrative proceedings are required. On remand, the ALJ should develop the record as necessary to obtain medical records and opinions as to plaintiff's functional limitations from treating and/or examining sources, obtain a consultative physical and/or mental examination and/or a medical expert review, and/or obtain a functional capacity evaluation and thoroughly explain her findings in accordance with the regulations. *See Martin v. Berryhill*, No. 16-CV-6184-FPG, 2017 WL 1313837, at *4 (W.D.N.Y. Apr. 10, 2017) ("There were many avenues available to the ALJ to fill the gap in the record....") (citing *Covey v. Colvin*, 204 F. Supp. 3d 497, 507 (W.D.N.Y. 2016)). The Commissioner on remand, "should employ whichever of these methods are appropriate to fully develop the record as to [Francis'] RFC." *Id.,* 2017 WL 1313837, at *4.

The Court's role in reviewing a disability determination is not to make its own assessment of the plaintiff's functional capabilities; it is to review the ALJ's decision for reversible error. *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Therefore, this matter is remanded to the Commissioner for further administrative proceedings consistent with this ruling. On remand, the Commissioner will address the other claims of error not discussed herein. *See*

*Moreau*, 2018 WL 1316197, at *4 ("Because the court finds that the ALJ failed to develop the record, it also suggests that the ALJ revisit the other issues on remand, without finding it necessary to reach whether such arguments would themselves constitute legal error justifying remand on their own.").

## III. CONCLUSION

For the reasons stated, plaintiff's Motion to Reverse the Decision of the Commissioner **[Doc. #13]** is **GRANTED.** Defendant's Motion for an Order Affirming the Commissioner's Decision **[Doc. #16]** is **DENIED**.

In light of the Court's findings above, it need not reach the merits of plaintiff's other arguments. Therefore, this matter is remanded to the Commissioner for further administrative proceedings consistent with this opinion. On remand, the Commissioner shall address the other claims of error not discussed herein.

This is not a recommended ruling. The consent of the parties allows this magistrate judge to direct the entry of a judgment of the district court in accordance with the Federal Rules of Civil Procedure. Appeals can be made directly to the appropriate United States Court of Appeals from this judgment. *See* 28 U.S.C. §636(c)(3); Fed. R. Civ. P. 73(c). The Clerk is directed to enter judgment in favor of the defendant and close this case.

SO ORDERED, this <u>24th</u> day of September, 2019, at Bridgeport, Connecticut.

           */s/ William I. Garfinkel*
          WILLIAM I. GARFINKEL
          United States Magistrate Judge